IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| MELVIN LEE MOBLEY, III, #1502681 | § | |
| VS. | § | CIVIL ACTION NO. 2:08cv129 |
| B. HEADRICK, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Melvin Lee Mobley, III, a Texas prison inmate previously confined at the Harrison County Jail, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. He sued Harrison County Jail Sergeant Brandon Headrick, Captain John Hain and Sheriff Tom McCool. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present Memorandum Opinion concerns the Defendants' motions for summary judgment (docket entry numbers 56, 57 and 58), the Plaintiff's response (docket entry #61), the Defendants' replies (docket entry numbers 62, 63 and 64), and the Plaintiff's responses (docket entry numbers 70, 71 and 72).

Facts of the Case

The original complaint was filed on March 19, 2008. The Plaintiff complained about being confined in a separation cell at the Harrison County Jail, denial of access to the law library, denial of access to medication, denial of the opportunity to practice his religious beliefs and denial of the right to visitation. On September 8, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff

1

testified as to the nature of his claims. The Defendants were present during the hearing. Sgt. Headrick and Captain Hain testified in behalf of the Defendants.

The Plaintiff testified that he was confined in the Harrison County Jail around November 16, 2007, on new criminal charges. He was placed in a separation cell on February 26, 2008. He testified that his complaint concerns matters that occurred after he was placed in the separation cell. He was placed in the separation cell after an incident involving several inmates. Two inmates were going to attack another inmate, who was his friend. He told the other inmates that they were not going to assault his friend. The Plaintiff testified that conflicting statements were given concerning whether he had possession of jail keys. Captain Hain thought he had placed the keys in his pants, which led to his confinement in the separation cell. The Plaintiff testified that he kicked the keys away from the other inmates during the altercation and subsequently picked them up to hand them to a jailer. He denied having possession of the keys. The Plaintiff complained that no reasons were given to him for placing him in the separation cell. Captain Hain told him he would stay in the separation cell until he leaves the jail. He noted that he had no disciplinary case or disciplinary hearing. It is again noted that he filed the present lawsuit less than a month later on March 19, 2008. The Plaintiff testified that he pled guilty on April 23, 2008, and a jury sentenced him.

The Plaintiff testified that he was denied privileges after he was confined in the separation cell, including church services, family visitation, recreation and commissary. His mother came to see him from South Carolina, but he was not permitted to see her. During a period of time of eighty-six days, he had maybe five visits. He testified that he does not know how many times he was denied visitation. The Plaintiff testified that he is suing Sgt. Headrick because he carried out orders from Captain Hain and Sheriff McCool to place him in the separation cell. Furthermore, Sgt. Headrick fabricated a

2

statement accusing the Plaintiff of placing the keys in his pant pockets. The Plaintiff reiterated that he picked up the keys off of the floor and gave them to a jailer.

When questioned by the Defendants, the Plaintiff denied threatening other inmates. He likewise denied threatening Sgt. Headrick. The Plaintiff testified that he started having medical problems while confined in the separation cell, including stomach ulcers, blood in his stools, serious headaches, nausea, anguish and paranoia. A doctor told him that he developed the ulcers due to stress.

Sgt. Brandon Headrick testified that he was involved in the incident that occurred on February 26, 2008. He observed a fight between two inmates. A jailer broke up the fight. The jailer then noticed that his keys were missing. The Plaintiff had the keys, and the Plaintiff handed them over to the jailer. The Plaintiff told him that he had the keys in order to keep another inmate from hitting someone else with them. Sgt. Headrick testified that he was not involved in the decision placing the Plaintiff in the separation cell. He testified that no disciplinary charges were filed against the Plaintiff. There was no need for disciplinary charges because the Plaintiff was placed in the separation cell.

Captain John Hain testified that he is the jail administrator. He noted that the jail has three classification levels. The Plaintiff was assigned to a maximum security custody level upon his arrival. The Plaintiff was confined in the separation cell for the safety and security of the facility and the public. He was not confined there due to a disciplinary case. Captain Hain testified that he was not present during the incident on February 26, 2008. He was informed about the incident and the fact that the Plaintiff had the keys. He noted that the Plaintiff was facing three life sentences. The Plaintiff had disciplinary problems before the incident. He was confined in a separation cell due his his past behavior and the incident on February 26, 2008. His custody level was reviewed every thirty days. Before the end of the first thirty days, the Plaintiff had tampered with the lights and had attacked a

3

secret service agent. The attack was recorded on a videotape. It is noted that the videotape was not submitted to the Court, and the Court has not viewed the videotape. The secret service agent was there because the Plaintiff had sent a letter threatening President Bush. Captain Hain testified that the Plaintiff was kept in the separation cell until he left for the Texas prison system. He reiterated that the Plaintiff was kept in the separation cell for the security of the facility, other inmates and jail staff. Captain Hain testified that the jail records reveal that the Plaintiff did not suffer any physical injuries while confined in the separation cell. The restrictions placed on the Plaintiff concerned keeping items away from him that could be used as a weapon. He could not be left unattended. He was not allowed to go to church services due to the incident. The Plaintiff was permitted to purchase items from the commissary.

## Defendants' Motions for Summary Judgment

The Defendants filed three separate motions for summary judgment, although they are similar in most respects. Their discussion of the facts mirrors the facts as presented during the *Spears* hearing. The Defendants argued that they did not violate the Plaintiff's rights. They argued that they are entitled to summary judgment based on qualified immunity. Sheriff McCool and Captain Hain further argued that the claims against them in their official capacities were actually claims against Harrison County and that the Plaintiff had not shown that Harrison County violated any of his constitutional rights.

In support of their motions for summary judgment, the Defendants attached their own affidavits. Sgt. Headrick's affidavit added a few facts that were not developed during the *Spears* hearing. He asserted that the incident occurred as Officers Slade and Winzer were pulling inmates out of a Bible study and placing them in the hallway near an exit to the jail. Two of the inmates got into a fight, and the officers endeavored to break it up. Officer Slade lost his keys, unbeknownst to any of

the officers. The keys were picked up by the Plaintiff. Sgt. Headrick specified that the Plaintiff secured the keys and placed them in his pants. He believes that the Plaintiff's actions were an obvious attempt to hide the keys in an effort to escape from the jail. When the officers discovered that the keys were missing, the Plaintiff was asked about the keys. He did not volunteer the fact that he had the keys until Sgt. Headrick was about to conduct a pat down search. Captain Hain and Sheriff McCool had the Plaintiff placed in the separation cell for the safety and security of the jail.

The details of the Defendants' factual and legal arguments will be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

Plaintiff's Response

The Plaintiff reiterated in his response that he was placed in a separation cell for 87 days, beginning on February 26, 2008. He was placed in the separation cell without notice or a hearing. He was not accorded the privileges of other inmates while he was confined in the separation cell. The Plaintiff asserted that his confinement in the separation cell was a violation of his constitutional rights because it was imposed as punishment and was grossly excessive and unreasonably related to any valid state interest. He argued that he had a right to due process before being confined in the separation cell. He acknowledged that prior to the incident on February 26, 2008, he received a disciplinary case regarding another matter and was confined in the separation cell. On February 26, 2008, he attended church services and subsequently observed a fight between two inmates. He noted that a third inmate grabbed the keys with the intent to use them to assault inmate Gabriel or Sgt. Headrick. The Plaintiff said he kicked the keys away from them, picked them up and handed them to Sgt. Wilhite. He rejected Sgt. Headrick's claim that he picked up the keys and hid them in his pants in an effort to escape. The Plaintiff attached a number of documents to his response that purportedly supported his version of the

5

facts. He noted that Sgt. Headrick specified in a statement that Officer Slade started looking for the keys, and he observed the Plaintiff pull them out of his waist band and hand them over to Sgt. Wilhite. He attached a statement from Officer Slade, who indicated that he observed the Plaintiff pulling the keys out of his pants when he starting looking for the keys. Inmate Hodge specified in a statement that the Plaintiff snatched the jail keys, placed them inside of his pants and moved away from the fight and officers. Lt. Bounds specified in a statement that he heard Officer Slade ask the Plaintiff why he had the keys in his pants and observed Officer Slade retrieve the keys from the Plaintiff. Officer Winzer specified in a statement that he was not sure what happened to the keys due to the chaos, but an officer retrieved them from the Plaintiff. The Plaintiff argued that viewing the facts in his favor, as the non-moving party, the Defendants are not entitled to summary judgment. He asserted that he was injured because he suffered severe mental, emotional and physical trauma and distress, along with terrible headaches, that led to a loss of sleep, loss of appetite, anguish and paranoia. The details of the Plaintiff's response will be fully addressed in the Discussion and Analysis section of this Memorandum Opinion.

## Defendants' Reply

The Defendants filed replies again arguing that the Plaintiff had not met his burden of establishing a constitutional violation. They denied the Plaintiff's claim that his placement in the separation cell was arbitrary and excessive. They argued that his classification and placement in the separation cell was reasonably necessary for the effective control of the jail and the custody of the Plaintiff, a pretrial detainee, and was not punishment *per se*. *See Armon v. Jones*, 580 F.Supp. 917, 924 (N.D. Tex. 1983). They asserted that all of the material evidence established that the Plaintiff was placed in the separation cell over real and immediate concerns for the safety and security of the jail,

6

including other inmates and jail staff, because of his dangerous and reckless conduct. They noted his previous disciplinary case. They also asserted that his status was reviewed every thirty days. He was kept in the separation cell because of a new disciplinary matter and his attack on a secret service agent. They argued that the Plaintiff's focus on exactly how he came into possession of the jail keys was irrelevant for determining whether they are entitled to summary judgment because the Plaintiff did, in fact, possess the keys and they felt that the Plaintiff was engaging in an attempt to escape from the Harrison County Jail. They argued that the facts presented by the Plaintiff as to how he came into possession of the keys were not material for purposes of summary judgment analysis. They noted that a fact is material if it might affect the outcome of the law suit. *Almond v. Tarver*, 468 F.Supp.2d 886, 891 (E.D. Tex. 2006) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). They argued that they are entitled to summary judgment based on qualified immunity and that the official capacity claims must fail.

Plaintiff's Replies

The Plaintiff asserted in his replies that the Defendants violated his constitutional rights and that they knew or should have known that their conduct violated the constitutional norm. He argued that Sgt. Headrick falsified a statement concerning the incident on February 26, 2008, which led to his confinement in the separation cell. He specified that he did not place the keys in his pants; instead, he merely kicked the keys to his right, picked them up and handed them to Sgt. Wilhite. He argued that there are disputed issues of material fact that preclude summary judgment.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985). In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to

establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). Factual controversies are to be resolved in the nonmovant's favor only when both parties have submitted evidence of contradictory facts. *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). The facts as presented by the moving party must be accepted as true if the nonmoving party fails to submit any competent evidence which creates a general issue of material fact. *Id.*, Local Rule CV-56(c).

The Defendants argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee).

9

The Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194 (2001). First of all, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.*

The Supreme Court recently revisted *Saucier v. Katz* in *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id.* at 817. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at 818. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821. The Supreme Court went on to discuss the facts of the case and found that the defendants were entitled to qualified immunity because the officers' conduct did not violate clearly established law. *Id.* at 822.

The Court is of the opinion that the application of the traditional two-step approach is appropriate in the present case. The threshold question for the Court's consideration is whether the

facts taken in a light most favorable to the Plaintiff show that the Defendants violated a constitutional right. The fundamental issue before the Court is whether the Plaintiff's confinement in the separation cell violated his constitutional rights. In general, the rights of pretrial detainees differ from those of convicted prisoners. Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because a "person lawfully committed to pretrial detention has not been adjudged guilty of any crime." *Id*. The government may, however, subject pretrial detainees to "the restrictions and conditions of the detention facility so long as those detentions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. The Supreme Court added that "the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible" does not equate to punishment. *Id*. at 537. The test for the Court to apply is whether the particular restriction is reasonably related to a legitimate penological objective, other than punishment. *Grabowski v. Jackson County Public Defenders Office,* 47 F.3d 1386, 1392 (5th Cir. 1995). Moreover, the question for the Court is whether the actions of jail personnel were objectively reasonable in light of the facts and circumstances of the case. *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998). An arbitrary and purposeless restriction on a pretrial detainee leads to an inference that the restriction is punitive. *See Olgin v. Darnell*, 664 F.2d 107, 109 (5th Cir. 1981). "[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify impositions of conditions and restrictions of pretrial detention and dispel any inferences that such restrictions are intended as punishment." *Id*. (quoting *Bell*, 441 U.S. at 540). In *Block v. Rutherford*, 468 U.S. 576 (1984), the Supreme Court upheld a blanket prohibition against contact visitation for pretrial detainees because the restriction was reasonably related to the legitimate objective of maintaining internal security at the jail.

11

The Fifth Circuit has accordingly held that a pretrial detainee has no right to be assigned to the general prison population. *Mitchell v. Sheriff Dept., Lubbock County, Tex.*, 995 F.2d 60, 62-63 (5th Cir. 1993). In *Grabowski*, *supra*, the Fifth Circuit upheld visitation restrictions on an inmate after he used abusive language in the visitation room because the restriction was reasonably related to a legitimate government purpose, as opposed to the purpose of punishment. In *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996), where a detainee alleged he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and a shower for a three day period, the Fifth Circuit found that the treatment did not amount to punishment to give rise to a constitutional claim. The Fifth Circuit has noted that the *Bell v. Wolfish* "test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth*, 74 F.3d 633, 646 (5th Cir. 1996).

The Fifth Circuit has issued several opinions in the Federal Appendix that concern the placement of a pretrial detainee in a separation or similar type cell. In *Carter v. Lowndes County*, 89 Fed. Appx. 439 (5th Cir. 2004), the Fifth Circuit held that placing an HIV+ inmate in a single man cell because of an infectious disease was reasonably related to a legitimate penological objective and was not punitive in nature, thus there was no denial of his constitutional rights. Moreover, prohibiting him from attending religious services due to his condition was reasonably related to legitimate penological interests, thus there was no denial of the inmate's right to exercise his religious beliefs. *Id.* at 442. The Fifth Circuit has held that placing a pretrial detainee in a restraint chair for twenty hours was not a violation of the Constitution because he was placed there to stop destructive behavior, as opposed to punishment. *Blakeney v. Rusk County Sheriff*, 89 Fed. Appx. 897 (5th Cir. 2004). Requiring a pretrial detainee to wear restraints while in the recreation yard did not violate the Constitution since it was not for purposes of punishment. *Moore v. Frasier*, 104 Fed. Appx. 385 (5th Cir. 2004).

In the present case, the undisputed summary judgment evidence reveals that the Plaintiff had disciplinary problems prior to February 26, 2008. He participated in actions that created a security problem during the incident that occurred on February 26, 2008. He was involved in an altercation with two other inmates. He acknowledged that he kicked the jail keys away from the other inmates and subsequently picked them up to hand them to the jailer. He denied ever having possession of the keys. There is a disputed issue of fact as to whether the Plaintiff temporarily placed the keys in his pants, but the Defendants appropriately argued that the issue of whether he placed the keys in his pants was not material. The fact remains that the Plaintiff had the keys in his hands when he should not have touched them. Captain Hain also testified that the Plaintiff faced three life sentences due to the criminal charges pending against him. Rightfully or wrongly, the Defendants concluded that the Plaintiff was an escape risk and a security risk, thus he was placed in the separation cell. He was kept in the separation cell when his classification was reviewed due to new disciplinary problems and because he attacked a secret service agent. The secret service agent was there because the Plaintiff had written a letter threatening President Bush. The competent summary judgment evidence supports a conclusion that the Plaintiff's confinement in the separation cell was reasonably related to legitimate security reasons, as opposed to punishment. The actions of the Defendants were objectively reasonable in light of the facts and circumstances of this case.

The Plaintiff was not allowed out of the cell unless he was in full restraints and escorted by no less than two staff members at all times. Restrictions were placed on him regarding recreation privileges, church services, commissary and visitation. These restrictions were made in furtherance of the safety and security concerns of the jail, as opposed to punishment. The Plaintiff has not presented any competent summary judgment evidence showing that the Defendants placed him in the

separation cell and imposed the attendant restrictions for the purpose of punishment, as opposed to legitimate safety and security concerns. He has not shown a constitutional violation.

The Plaintiff testified that he started having medical problems while confined in the separation cell, including stomach ulcers, blood in stools, serious headaches, nausea, anguish and paranoia. He also complained that he did not receive medical care for these problems, although he admitted he saw a doctor who told him that his ulcers were the product of stress. The Fifth Circuit has held that the deliberate indifference standard applies with respect to medical or safety claims by pretrial detainees. *Hare v. City of Corinth*, 74 F.3d at 647. In particular, the Court held that "the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." *Id*. at 647-648. In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court held that the deliberate indifference standard means that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." In the present case, the Plaintiff alleged that he had medical problems, but he did not show that his medical problems were serious or that the Defendants were deliberately indifferent to such problems. He has not shown that the Defendants violated his constitutional rights regarding any medical problems that he may have had.

The Defendants appropriately noted that the Fifth Circuit has distinguished between civil rights cases involving conditions of confinement and a jail official's episodic acts or omissions. "[U]nder *Bell*, a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related

14

to a legitimate governmental purpose." *Hare v. City of Corinth*, 74 F.3d at 640. The *Bell* test applies "when a pretrial detainee attacks general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* at 643. On the other hand, an episodic act or omission requires the Court to employ the standard of subjective deliberate indifference. *Id.* The distinction between whether a claim is a condition of confinement or a episodic act is not always clear, as noted by the Fifth Circuit in *Blakeney* regarding whether confining a pretrial detainee in a restraint chair is a condition of confinement or an episodic act. 89 Fed. Appx. at 899. To prove deliberate indifference, a pretrial detainee must show that a state official knew of and disregarded an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. at 837; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Deliberate indifference is more than mere negligence. *Id.* Regardless of whether the Plaintiff's placement in a separation cell and his continued confinement there is viewed as a condition of confinement or an episodic act, the Plaintiff has not shown a constitutional violation. With respect to the test under *Hare v. City of Corinth*, he has not shown deliberate indifference on the part of the Defendants. They are entitled to summary judgment because Plaintiff has not shown a violation of his constitutional rights.

The Defendants are entitled to summary judgment for the additional reason that the Plaintiff has not satisfied the second prong in the qualified immunity analysis requiring him to show that the Defendant's conduct was objectively unreasonable under existing clearly established law. *Fraire v. City of Arlington*, 957 F.2d at 1273. Other than making a conclusory assertion that the Defendants should have known that their behavior violated the Constitution, the Petitioner has not shown that a right was violated and that the right was clearly established. Moreover, he has not shown that they had any reason to think that their conduct violated the Constitution since he failed to show that they, in fact, violation a right. The Defendants are entitled to summary judgment based on qualified immunity.

Finally, Captain Hain and Sheriff McCool argued that the claims against them in their official capacities are actually claims against Harrison County and that the claims against Harrison County should be dismissed because the Plaintiff has not shown that Harrison County violated any of his constitutional rights. Defendants Hain and McCool correctly noted that a suit against a person in his official capacity is merely another way of pleading a cause against the governmental entity itself. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). The doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In *Board of County Comm'rs of Bryan County v. Brown*, the Supreme Court noted that the line of cases starting with *Monell* require that a "plaintiff seeking to impose municipal liability under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." 520 U.S. 397, 403 (1997). The Supreme Court went on to discuss the concepts of a "policy" and "custom" as follows:

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Id.* at 403-04 (citations omitted). A "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. In cases where a "plaintiff is seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. . . . A

showing of simple or even heightened negligence will not suffice." *Id.* at 406-407 (citations omitted). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.* at 410.

In the present case, the Plaintiff has not shown that there was a policy or custom in the Harrison County Jail that resulted in his injuries. He has not shown that there is any basis for holding Harrison County liable in this case. Consequently, Captain Hain and Sheriff McCool are entitled to summary judgment to the extent that the Plaintiff has sued them in their official capacities. It is therefore

**ORDERED** that the Defendants' motions for summary judgment (docket entry numbers 56, 57 and 58) are **GRANTED** and the complaint is **DISMISSED** with prejudice. All motions not previously ruled on are **DENIED**.

SIGNED this 22nd day of September, 2009.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE